Olan SEAY, Appellant,

v.

Frank KANA, Jr., Appellee.

No. 13697.

Court of Civil Appeals of Texas.

Houston.

May 4, 1961.

E. T. Yates, Brownsville, for appellant.

Strickland, Wilkins, Hall & Mills, Mission, E. M. Cage, Dallas, for appellee.

————◆————

Spiner, Pritchard & Thompson, Troy T. Stokes, Houston, for appellant.

Banister & Gibbons, John R. Banister, III, Houston, for appellee.

BELL, Chief Justice.

Appellant sued appellee to recover damages for injuries suffered by him in an automobile collision. The jury found negligence against appellee, but it also found that appellant failed to keep a proper lookout and drove at an excessive rate of speed under the circumstances and that each act was a proximate cause of the collision. Upon the verdict the court rendered judgment that appellant take nothing.

Appellant complains that the trial court erred in not disregarding the jury's answers to the issues finding contributory negligence in the two respects mentioned because there was no evidence to support the answers, and that the trial court should have granted a new trial because of this and also because the jury's answers were so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

The only witnesses to the accident were appellee and appellant, though an investi-gating police officer testified as to the facts he found at the scene of the accident.

Appellant testified the collision between his automobile and that driven by appellee occurred on February 11, 1958, about 7 o'clock a. m. It occurred at the intersection of Spaulding and Firnat Streets in the City of Houston. Firnat Street runs east and west. Spaulding runs north and south. The intersection has no traffic controls. Each is 20 feet in width and has asphalt surfacing. This particular morning was cloudy; the streets were slick and it was misting slightly, though it had not been raining. Appellant was on his way to work. He was proceeding in an easterly direction. He was familiar with the intersection as he traveled it on his way to work. To his left, as he entered the intersection, were some junk automobiles on the west side of Spaulding Street. There is no testimony showing a blind corner, but there is evidence that these automobiles interfere with observation to some extent. It is significant that photographs of the intersection and its approaches were introduced and were before the jury, but they have not been brought forward to us, so we cannot appraise them. Appellant was driving about 30 miles per hour as he entered the intersection. There is no evidence that on his approach to the intersection and before his entry he looked for traffic on Spaulding. However, as he reached the intersection, he testifies, he looked to his right and then to his left. At another point in his testimony he says he looked to his left and then to his right. As he looked to his left he saw a "blur." The "blur" was appellee's automobile traveling south on Spaulding. The collision occurred seconds later. The collision occurred about the center of the intersection. Appellee's automobile struck appellant's between the left door and front wheel. Appellant says he had no time to apply his brakes. Appellant testified his automobile reached the intersection first.

Appellee testified as he came south on Spaulding he looked to his right and saw

appellant's automobile about three car lengths back of the intersection. Appellee applied his brakes but was unable to avoid the collision. Appellee says appellant was traveling about 40 miles per hour.

The investigating officer measured the skid marks made by appellee's car and they were 31 feet in length; allowing 10 feet for the distance from the front to the rear wheels, this shows appellee was about 21 feet from the intersection when he put on his brakes. Measurements also made by the officer showed the collision occurred eleven feet north of the south curb of Firnat and nine feet east of the west curb line of Spaulding. Appellee testified he entered the intersection first.

The position of appellant seems to be that since the only testimony on lookout is from him and since he testified he looked to his right and left as he entered the intersection, there is no evidence of failure to keep a lookout. While, he says, the jury could refuse to believe him, still this does not, in the state of the record here, authorize a jury to find no proper lookout because if he is not believed, there is just no evidence on lookout. He claims the jury's answer amounts to a finding based solely on a presumption of negligence because the accident happened.

■■ We are unable to agree with appellant. Failure to keep a proper lookout may be established by circumstantial evidence. Lynch v. Ricketts, Tex., 314 S.W.2d 273. The jury had before it pictures of the intersection and its approaches. There is nothing in the record showing that appellant, before he reached the intersection, could not have seen appellee. The jury could have concluded that since appellee saw appellant when appellant was three car lengths back of the intersection, appellant could have seen appellee had he looked

toward his left. Too, the jury could have concluded that when appellant looked to his right he should have looked to his left first because the first lane of traffic he was to cross on Spaulding was coming from his left.

Appellant next contends there was no evidence to support the jury's finding of excessive speed because appellee made an unresponsive answer that appellant was driving 40 miles per hour and also appellee was not shown to have been qualified to testify as to speed.

■■ It is unnecessary for us to specifically discuss such contention because we are of the opinion that appellant's own testimony supports the jury's finding that appellant was driving at an excessive rate of speed under the circumstances. Appellant testified he was driving about 30 miles per hour. The morning was misty. The streets were slick. He was familiar with the corner and knew while observation was not cut off by the junked cars that it was at points impeded. Appellant did not slow up for the intersection. We do not have the question of whether appellant was exceeding the speed limit. Even if he were not exceeding it, he was under the duty not to drive faster than an ordinarily prudent person in the exercise of ordinary care would drive under the same or similar circumstances.

We are also of the view that we cannot say the answers of the jury to these issues were so contrary to the overwhelming weight and preponderance of the evidence as to be unjust.

The judgment of the Trial Court is affirmed.

COLEMAN, J., not sitting.